**KOLLISION KING, INC., and Victor Castanon, Appellants,**

v.

**Juan Manuel CALDERON, Appellee.**

No. 13–96–311–CV.

Court of Appeals of Texas, Corpus Christi.

March 12, 1998.

**22** ◼ ▆▆▆▆▆▆▆▆▆▆▆

J. Rolando Olvera, Jr., Luis R. Hernandez, Tom Fleming, Fleming, Hewitt & Olvera, Brownsville, for Appellant.

Paul Wilson, Phillippe & Wilson, Brownsville, Thomas Andrew Crosley, Branton & Hall, P.C., San Antonio, for Appellee.

Before DORSEY, YANEZ and RODRIGUEZ, JJ.

## OPINION

DORSEY, Justice.

This is a suit to recover damages for conversion of an automobile arising from the wrongful foreclosure of a purported worker's or garageman's lien. Trial was to a jury which answered special questions favorably to the plaintiff, Juan Calderon. The trial court entered judgment against the purported lienholders, Kollision King, Inc., and Victor Castanon. Appellants raise twenty-three points of error for our consideration. We affirm the judgment.

In November, 1993, Juan Calderon bought a 1993 Hyundai Sonata for $13,375.01, financing it through Brownsville Teacher's Credit Union. Three months later his new car was rear-ended causing extensive damage. He took his damaged car to Kollision King, Inc., an automobile body repair shop where he was a part-time employee, and dealt with Victor Castanon, the president and sole shareholder. Although Calderon had no collision insurance coverage to pay for the repairs, Mr. Castanon agreed to repair the Hundai and to provide Mr. Calderon with a rental car while the repairs were being done. They were to look to the liability insurance of the other driver to pay the costs involved. Two weeks or so later Mr. Castanon and the adjuster for the third party's insurance carrier agreed that the carrier would pay approximately $4,000 to repair the car. Only then did the repairs begin.

When the repairs were finished the car was turned over to Mr. Calderon, although it was disputed whether it was for a test drive or final delivery. Nonetheless, Mr. Calderon testified he returned the car to Kollision King about twenty-five days later at the insistence of Mr. Castanon so Kollison King could collect from the insurance carrier. Later Kollision King sold the car to Mr. Castanon for satisfaction of the repair and rental car bills, and Mr. Castanon resold it to a Toyota dealer for about $4,000 profit.

Calderon sued Kollision King, Inc., and Mr. Castanon for conversion resulting from the wrongful foreclosure of its purported lien. The jury responded in favor of the plaintiff, who took judgment against Kollision King, Inc., and Victor Castanon for actual damages of $17,305, exemplary damages against Kollision King, Inc., of $1 and against Victor Castanon of $4,004.68, and attorney's fees. The judgment holds the defendant Castanon jointly and severally liable with Kollision King for the judgment. From that judgment Kollision King and Victor Castanon perfected appeal and bring twenty-three points of error.

The theory of plaintiff's case, and resulting recovery, was that the possessory lien that Kollision King had on his car for repairs vanished upon the delivery of the car to Mr. Calderon. Because the lien did not exist after the voluntary delivery of the car to the owner, the later sale of the vehicle to enforce the non-existent lien was conversion.

◼ Such a lien is a creation of statute. Subchapter A of Chapter 70 of the Texas Property Code is entitled "Possessory Liens", and contains §§ 70.001 (Worker's Liens) and 70.003 (Stable Keeper's, Garageman's, and Pasturer's Liens). Section 70.001(a)(1) provides that a worker, or mechanic, who by labor repairs a vehicle may retain possession of the vehicle until the amount due under the contract for the repairs is paid. The statute provides the procedure and timing for the foreclosure of the lien. *See § 70.001(a)* and (b). Such a lien is a possessory lien and is lost upon the voluntary delivery of the vehicle to the owner, when no fraud on the part of the owner is involved. *Atlas Amalgamated, Inc., v. Castillo,* 601 S.W.2d 728, 730 (Tex.Civ.App.—Waco 1980, writ ref'd n.r.e.). The lien is not revived if the mechanic again comes into possession of the vehicle. *Garcia v. Rutledge,* 649 S.W.2d 307, 311 (Tex.App.—Amarillo 1982, no writ); *Atlas Amalgamated,* 601 S.W.2d at 730; *Tex-*

as *Hydraulic & Equip. Co., v. Associates Discount Corp.,* 414 S.W.2d 199, 202 (Tex. Civ.App.—Austin 1967, no writ).

■ Conversion is " 'the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights.' " *Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex.1992). A plaintiff must prove at the time of the conversion, he was the owner of the property and had legal possession of it or was entitled to possession. *Lone Star Beer, Inc. v. Republic Nat'l Bank,* 508 S.W.2d 686, 687 (Tex.Civ.App.—Dallas 1974, no writ); *Lone Star Beer, Inc. v. First Nat'l Bank,* 468 S.W.2d 930, 933–34 (Tex.Civ. App.—El Paso 1971, writ ref'd n.r.e.). If one exercises dominion and control over a car by selling it without having a right to do so, he converts the vehicle. *See L.L.M. v. Mayes,* 733 S.W.2d 642, 646 (Tex.App.—San Antonio 1987, no writ).

The first question the jury was asked was: "At any time after Kollision King performed the repairs and before the vehicle was sold, did Kollision King surrender possession of the vehicle to Mr. Calderon?" (The position of the defendants was that Calderon was given the car to test drive for a brief time.) The jury answered affirmatively. Appellants challenge the legal and factual sufficiency of the evidence supporting that answer by their eighteenth point of error.

■ Mr. Calderon's testimony was after Kollision King repaired his car, he was allowed to drive it. He continued to drive it for about thirty days. He returned the car after he was told Castanon needed it to obtain payment from the insurance company for the repairs. According to the plaintiff, he and Castanon did not discuss whether he could only test drive it. The defendant testified to the contrary; that Calderon was allowed to use the car for an approximate two-and-one-half day test drive. His testimony was that he did not surrender possession of the car to Calderon. Ismael Rodriguez, an employee of Kollision King, testified similarly. After considering all the evidence, we hold the evidence was sufficient to support the answer to question one. We overrule point eighteen.

■ By points of error one through five, appellants complain of the damages awarded regarding the value of the vehicle and its loss of use. In particular they complain that the plaintiff owed more on the car to the credit union than the jury found the vehicle was worth, and the court did not give proper credit for the debt extinguished by the credit union through payment by its insurance carrier. In essence appellants challenge the application of the collateral-source rule to exclude the payment to the credit union. However, there is no bill of exceptions or proffer of the excluded evidence of appellants nor any legal authority in their brief supporting these contentions. Nothing being preserved for review, we disregard these issues. *See* Tex.R.App. P. 33.

■ Appellants complain of the sufficiency of the evidence to support the jury's valuation of the vehicle converted and the loss of its use to Mr. Calderon, Mr. Calderon testified that his car was valued at "some $11,-500" in June 1994, the time when appellants converted it. He based his opinion on these factors: (1) the car was only one year old; (2) he had the car for a short period; (3) the accident did not damage the motor; (4) it had approximately 18,000 miles; and (5) it was in very good condition inside. The plaintiff produced an expert who testified to the same value and the value of the loss of use was $360 per month. We hold the evidence sufficient to support the jury's answers to questions two and six. Appellants first five points of error are overruled.

Appellant's points of error six through nine challenge the award of attorney's fees to the plaintiff. In particular, point six challenges the sufficiency of the evidence to support the amount, point seven asserts there is no legal basis supporting the award of fees, point eight asserts the attorney's fees on appeal are not predicated on the plaintiff prevailing on appeal, and point nine asserts the fees are not segregated among the various causes of action. The jury awarded $46,000 for preparation and trial, $10,000 for an appeal to this Court, and $10,000 for an appeal to the supreme court.

Section 70.008 provides, in relevant part, "The court in a suit concerning possession of a motor vehicle . . . and a debt due on it may award reasonable attorney's fees to the prevailing party." TEX. PROP.CODE ANN. § 70.008 (Vernon 1995). The statute does not restrict the award of attorney's fees to one suing on a debt who wishes to retain possession of a vehicle. In this action the plaintiff sued in conversion and not for possession of the vehicle, because the vehicle could not be returned to him by the defendants. However, at issue was the right of possession of the vehicle and the debt claimed secured by the possessory lien. We hold the plaintiff, Calderon, being the prevailing party, was entitled to attorney's fees under the statute. *See Seureau v. Mudd,* 515 S.W.2d 746, 749 (Tex.Civ.App.—Houston [14 th Dist.] 1974, writ ref'd, n.r.e.).

The next issue is the sufficiency of the evidence to support the award of $46,000 attorney's fees. We review both evidence supporting the award and that not doing so to determine whether a preponderance of the evidence supports the jury's finding. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex. 1986). If we determine it does not, we must state why the answer is contrary to the greater weight of the evidence. *Pool,* 715 S.W.2d at 635.

Paul Wilson, a trial attorney with about four years' experience, represented the plaintiff. Most of his experience was in plaintiff's civil work. He spent about fifteen to eighteen hours reviewing documents, and he made in the range of twenty appearances. He worked more on this case, as far as time, than he had worked on any other case. He said "the allegations of the defendant in his counterclaim and his special exceptions and his affirmative defenses kept expanding . . . and changing." In this case, he charged $125 per hour for work performed out of court. His testimony showed this was a customary fee in Cameron County for someone with his experience on a case like this. He also said this was a reasonable fee for someone with his competence and experience. He said he had spent 450 hours on the case, but he would have billed for only 340 hours at $125 per hour ($42,500). He charged $150 per hour for trial work. The trial lasted three days, and he spent seven hours per day in court ($3,150). Accordingly, his total billable time equaled $45,650, up to the point in trial of his testimony. However, he also later testified that $40,000 was a reasonable fee for preparation and trial of this case, and he argued that amount to the jury. Opposing counsel also sought attorney's fees, having evidence that $40,000 was reasonable. Reasonable and necessary fees to appeal to this Court were $10,000 and $10,000 for the supreme court.

Section 70.008 allows the trial court to award a "reasonable attorney's fee." The jury had the testimony of Mr. Wilson that, up to the time of his testimony, $45,650 had been accrued in fees. Although he testified on the last day of a several day trial, the proceedings did not end with his testimony, and the jury knew it when they deliberated. The record indicates the trial went on for several hours after Mr. Wilson testified. We hold the evidence is sufficient to support the sum found by the jury to be a reasonable attorney's fee. We overrule points of error six, seven, and eight.

There was no objection to the charge to correspond with point of error nine. It is therefore waived and overruled.

Appellants challenge the basis for the award of exemplary damages by points thirteen and fifteen, complaining the court erred in submitting questions three and seven because of a lack of evidence that Kollision King and Castanon acted with malice in selling the vehicle. By point ten, they challenge the legal and factual sufficiency of the evidence to support the answers to questions three, seven, and the award of exemplary damages. Question three read as follows:

In selling the automobile did Kollision King or Victor Castanon act with malice against Mr. Calderon?

Question seven read:

In conducting the public sale did Kollision King or Mr. Castanon act with malice against Mr. Calderon?

The jury answered affirmatively to both and awarded exemplary damages of $1 against

Kollision King and $4,004.68 against Castanon.

There was evidence that Kollision King, Inc., and Mr. Castanon refused a tender of the repair bill made by the creditor credit union and proceeded to sell the plaintiff's car. The appellants regained possession of the car from the plaintiff by lying to him that he was required by law to return it to them. The notice of the sale was minimal, consisting solely of a small card placed on the door of Kollision King the day before the sale. The sale was conducted in private by Castanon for Kollision King, and the vehicle was sold to Castanon individually for $4,695.32, the amount of the debt claimed by Kollision King, Inc. Three weeks later he sold the car for $8,700, pocketing $4,004.68 profit, the same amount awarded as exemplary damages against him.

We hold the evidence is sufficient to support the findings of malice to justify the award of exemplary damages. We overrule points ten, thirteen, and fifteen.

By point eleven, appellants complain the court erred in submitting questions three, seven, and the question for exemplary damages[1] because no legal basis existed to disregard the corporate fiction between Kollision King and its president and sole stockholder, Victor Castanon. In *Mayflower Inv. Co. v. Stephens*, 345 S.W.2d 786, 795 (Tex. Civ.App.—Dallas 1960, writ ref'd n.r.e.), the court stated:

> an officer or any other agent of a corporation may be personally as responsible as the corporation itself for tortious acts when participating in the wrongdoing. An officer of a corporation is always primarily liable for his own torts, even though the principal is also liable therefore, but he cannot be held liable for a wrong in which he has not participated.

*Stephens*, 345 S.W.2d at 795. Knowing participation in a tortious act will render the corporate agent personally liable. *Barclay v. Johnson*, 686 S.W.2d 334, 336 (Tex.App.–Houston [1st Dist.] 1985, no writ). It is not necessary that the "corporate veil" be pierced in order to impose personal liability, as long as it is shown the corporate officer knowingly participated in the wrongdoing. *Barclay*, 686 S.W.2d at 336; *Permian Petroleum Co. v. Barrow*, 484 S.W.2d 631, 634 (Tex.Civ.App.—El Paso 1972, no writ).

We hold the trial court did not err by submitting these questions. We overrule point eleven.

By points five, eight,[2] nine, twelve, fourteen, sixteen, twenty-one, and twenty-three, appellants complain the trial court erred by including various questions in the charge. On appeal, they make arguments showing why the trial court should not have included these questions. However, they did not propound these arguments to the trial court prior to the time it submitted the charge to the jury, although the court allowed both sides to lodge objections to the charge.

Rule 272 expressly provides all parties must have adequate opportunity to review and object to any defects in the charge, and "[a]ll objections not so presented shall be considered as waived." TEX.R. CIV. P. 272. Rule 274 contains additional waiver provisions. Our supreme court has held Rule 272, with or independent of Rule 274, is a broad waiver provision defeating complaints about what the jury found or the form or substance of the jury questions. *Cogburn v. Harbour*, 657 S.W.2d 432, 432 (Tex.1983); *Edwards v. Strong*, 147 Tex. 155, 213 S.W.2d 979, 981 (1948). In the instant case, because appellants did not propound their objections prior to submission of the charge, they waived any error. TEX.R. CIV. P. 272; *Wilgus v. Bond*, 730 S.W.2d 670, 672 (Tex.1987) (failure to properly object waives any error in submission of issues). We overrule these points.

Due to our disposition of the above points, we need not address points of error two, seventeen, nineteen and twenty-two. TEX. R.APP. P. 47.1.

The judgment is AFFIRMED.

---

1. This question on exemplary damages is not numbered.

2. Point eight contends, in part, the trial court did not predicate the award of attorneys fees upon the success or failure on appeal.