**ELITE TOWING, INC., Appellant,**

v.

**LSI FINANCIAL GROUP, Appellee.**

No. 03–98–00047–CV

Court of Appeals of Texas,
Austin.

Jan. 28, 1999.

James C. Mosser, James C. Mosser Inc. Lawyers, Dallas, for Appellant.

Mark S. Armstrong, Houston, for Appellee.

Before Chief Justice ABOUSSIE, Justices B.A. SMITH and YEAKEL.

LEE YEAKEL, Justice.

Appellee LSI Financial Group ("LSI") sued appellant Elite Towing, Inc. ("Elite")[1] in district court urging various claims, including conversion, negligence, and violation of section 70.006 of the Texas Property Code,[2] arising out of Elite's disposing of an automobile in its possession. The district court granted a partial summary judgment in favor of LSI as to liability on its Property Code claim. Later, following a bench trial, the district court rendered a final judgment awarding LSI damages and attorney's fees. Elite appeals. We will affirm the district court's judgment.

---

1. LSI also sued Keshia L. Eubanks and David M. Laney, Commissioner of the Texas Department of Transportation. The district court's final judgment denied any relief against them. That portion of the judgment has not been appealed.

2. See Tex. Prop.Code Ann. § 70.006 (West 1995 & Supp.1999).

## BACKGROUND

On June 26, 1996, Elite gained possession of a 1994 Mitsubishi Mirage automobile. The vehicle, owned by Keshia L. Eubanks, was subject to a lien created by a security agreement. LSI is the loan servicer and attorney-in-fact for the secured party, First Bank of the Americas.[3] On July 2, Elite sent written notice regarding its possession of the vehicle to Eubanks and the original lienholder,[4] a copy of which was later obtained by LSI. The notice stated, *inter alia*, that the vehicle would be sold at a public sale on August 1 unless it was redeemed and removed from the premises. It is undisputed that this is the only notice that Elite sent to either the owner or any lienholder of the vehicle.

On August 1, Lissa Ruffin, president of Elite, conducted a sale and disposed of the vehicle. Robert Ruffin was the only bidder present at the sale and bought the vehicle on behalf of Elite Wholesales for $540. Approximately one week later, LSI contacted Elite and was informed of the sale.

LSI sued Elite and later filed a motion for summary judgment asserting that it was entitled to judgment as a matter of law because in selling the vehicle Elite failed to comply with section 70.006 of the Property Code. *See* Tex. Prop.Code Ann. § 70.006 (West 1995 & Supp.1999). The district court granted the motion as to liability but reserved the issues of damages and attorney's fees for "determination at a later date." The order, signed July 30, 1997, reflects that the hearing on the motion for summary judgment had been held on June 27.

On July 1, shortly after the hearing but before the signing of the order, LSI served Elite with notice that trial of the remaining issues was set for August 25. The certificate of service attached to the notice reflects that it was sent to Elite's attorney, James C. Mosser, by certified mail return receipt requested, at the address for Mosser reflected in Elite's trial pleadings. It is not in dispute

that the address shown in the certificate of service is Mosser's correct office address. On July 3, Gerald Scheff, an attorney officing in the same building as Mosser, signed the receipt for the notice. The receipt was returned to LSI's attorney. Neither Mosser nor a representative of Elite appeared at the trial. Mosser asserts that he never received the notice. In the absence of Elite, its representative, or attorney, the district court conducted a bench trial and rendered judgment for LSI for damages and attorney's fees in the amounts of $8,625 and $14,472.09, respectively. Elite filed a motion for new trial alleging lack of notice of the trial setting. Elite did not request a hearing on its motion, and it was overruled by operation of law.

Elite appeals in five issues: the first two attack the partial summary judgment; the third complains that Elite should have been granted a new trial because its attorney did not receive notice of the trial setting; the fourth addresses whether attorney's fees were appropriate in this case; the final issue asserts that venue was improper.

## DISCUSSION

### Partial Summary Judgment

The standards for reviewing a summary judgment are well established. The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true, and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.*

### *Conversion and Negligence*

█ Elite asserts that the district court erroneously rendered summary judgment against it on LSI's conversion and negligence

---

3.  The security agreement was initially held by Summit Acceptance Corporation. Summit assigned its interest to First Bank of the Americas which became the lienholder and secured party under the agreement.

4.  Elite asserts that at the time it sent the notice, Summit Acceptance Corporation was the lienholder of record.

claims. LSI's motion for summary judgment addressed *only* section 70.006 of the Property Code. It was on this motion that the district court granted partial summary judgment.[5] Courts can only address issues that are expressly presented in a motion for summary judgment. *See Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993) (granting motion for summary judgment on cause of action not addressed in motion is reversible error); *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983) (summary judgment cannot be granted as a matter of law on cause of action not addressed in summary-judgment proceeding). The district court did not grant summary judgment against Elite on LSI's conversion or negligence claims. We will address only the issue before the district court in LSI's motion.

### Compliance with the Texas Property Code

Section 70.006 of the Texas Property Code provides in pertinent part:

(a) A holder of a lien under this subchapter on a motor vehicle . . . who retains possession of the vehicle . . . for 30 days after the day that the charges accrue shall give written notice to the owner and each holder of a lien recorded on the certificate of title. . . .

(b) If the charges are not paid before the 31st day after the day that the notice is mailed, the lienholder may sell the vehicle . . . at a public sale and apply the proceeds to the charges. . . .

Tex. Prop.Code Ann. § 70.006 (West 1995 & Supp.1999).

5. The district court's order reads:

IT IS THEREFORE, ORDERED, ADJUDGED and DECREED that Plaintiff, LSI FINANCIAL GROUP'S, Motion for Summary judgment against Defendant Elite Towing, Inc., as to liability, is GRANTED. The issue [sic] of damages and attorney's fees are reserved for determination at a later date.

6. The summary-judgment proof includes, *inter alia,* Elite's response to interrogatories and request for admissions submitted to it by LSI as well as the affidavits of Lissa Ruffin and Robert Ruffin. Elite states that the vehicle was sold to "Robert Ruffin, Elite Wholesales," while Ruffin avers that he individually purchased the vehicle. The receipt tendered by Elite after the sale was

■ Elite argues that it could not have violated section 70.006 because it never actually *sold* the vehicle, as LSI obtained a temporary restraining order preventing Elite from transferring the vehicle's title. Elite asserts that because title was not transferred, there was no sale and section 70.006 does not apply. We find this argument to be without merit. When title to an automobile is a collateral issue, *i.e.,* where there are no direct competing claims to such title, "a litigant might show by almost any kind of evidence that ownership in fact rests in a person other than the person named as the owner in the certificate [of title]." *Arnold v. State,* 793 S.W.2d 305, 311 (Tex.App.—Austin 1990, no writ).

As there are no competing claims to title of the vehicle, we may look to the record for evidence to determine whether the vehicle was in fact "sold" by Elite. The summary-judgment proof reflects Elite sold the vehicle at a "public sale," Elite Wholesales bought the vehicle at this sale, Elite Wholesales is the present owner of the vehicle, and Robert Ruffin (presumably on behalf of Elite Wholesales) took possession of the vehicle and made repairs to it.[6] We conclude that section 70.006 does apply in this case because Elite did sell the vehicle to Elite Wholesales and no one else asserted a claim to its title.

■ Having held that the vehicle was in fact sold, we must determine if Elite gave proper notice of the sale. Elite argues that section 70.006 requires only one notice[7] and a 31–day waiting period before a vehicle may be sold, while LSI submits that the notice

to "Elite Wholesales." The specific purchaser is not material to the resolution of this appeal, and we refer to "Elite Wholesales" as the purchaser merely for convenience.

7. In support of its "one notice" position, Elite directs us to *First State Bank v. Arsiaga,* 804 S.W.2d 343 (Tex.App.—Eastland 1991, writ denied) and *Thompson v. Apollo Paint & Body Shop,* 768 S.W.2d 373 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Neither case is applicable to the issue regarding notice prior to sale. *Arsiaga* holds that notice under section 70.006 is not required to *perfect* a possessory lien. *See Arsiaga,* 804 S.W.2d at 345. *Thompson* holds that actual possession of a vehicle is required to establish a worker's lien. *See Thompson,* 768 S.W.2d at 376.

provision contained in section 70.004 of the Property Code also applies to the facts of this case and further that section 70.006 mandates that Elite was required to maintain possession of the vehicle for 61 days prior to sale. We must read chapter 70 as a whole to determine the underlying legislative intent. *See Citizens Bank v. First State Bank,* 580 S.W.2d 344, 348 (Tex.1979) ("The cardinal rule in statutory interpretation and construction is to seek out legislative intent from a general view of the enactment as a whole").

Chapter 70 of the Property Code addresses the lien of a garageman such as Elite. Section 70.003 grants a garageman with whom a motor vehicle is left for care a lien on the vehicle for charges for that care, including reasonable towing charges. *See* Tex. Prop.Code Ann. § 70.003(c) (West 1995). A garageman holding a lien pursuant to section 70.003 must send a notice to the registered owner of the vehicle and each lienholder of record no later than the 10th day after the day possession is obtained. *See id.* § 70.004(a). This notice must contain the location of the vehicle, the amount of accrued charges, a request for payment, and a request to remove the vehicle. *See id.* § 70.004(b). Finally, section 70.006 requires notice be sent to the owner and any lienholder of record when the garageman seeks to sell the vehicle. *See id.* § 70.006.

▮ Elite argues that it complied with the notice requirements set out in section 70.006 when it sent the July 2 notice. In *Dob's Tire & Auto Center v. Safeway Insurance Agency,* 923 S.W.2d 715 (Tex.App.—Houston [1st Dist.] 1996, writ dism'd w.o.j.), a case similar to the case before us,[8] the court of appeals examined chapter 70 in its entirety, determined that the 10–day notice requirement in section 70.004 served a different purpose from the notice required under section 70.006, and held that section 70.006 required 31 days notice *after* the lienholder possessed the vehicle for 30 days. *See id.* at 719. The

court concluded that the notice required under section 70.006 is separate and apart from any notice required or sent under section 70.004. *See id.* at 718–20.

Section 70.006 clearly states that if possession of the vehicle is retained for 30 days after charges first accrue, it may not be sold until the 31st day after notice is mailed. *See* Tex. Prop.Code Ann. § 70.006(b) (West 1995); *Dob's Tire & Auto Ctr.,* 923 S.W.2d at 719. Elite retained possession of the vehicle on June 26 and, pursuant to section 70.003, obtained a lien on the vehicle for charges that accrued for the towing and care of it. On July 2, Elite sent a notice to whom it perceived to be the lienholder of record. This notice seemingly attempts to combine the elements required by both section 70.004 and section 70.006 in that it generally contains the information required by section 70.004, but also gives notice of the forthcoming sale of the vehicle on August 1, the 30th day after the mailing of the notice. At the time the notice was mailed, Elite had not retained possession of the vehicle for 30 days after accrual of the first charges to which it was entitled *and* did not give an additional 31 days notice of the proposed sale. We agree with the First Court of Appeals:

> Section 70.006(a) requires a lienholder who retains possession of a vehicle for 30 days to send a notice to the owner requesting payment. If the owner has not made the payments on the vehicle before the 31st day after the notice was sent, then the lienholder can sell the car. TEX. PROP. CODE ANN. § 70.006(b). *This amounts to a minimum of 61 days a lienholder has to retain possession of a vehicle before the lienholder can sell the vehicle.*

*Dob's Tire & Auto Ctr.,* 923 S.W.2d at 719 (emphasis added).[9] We conclude that Elite did not comply with the notice requirement under section 70.006 of the Property Code.

---

8. *Dob's Tire & Auto Center* involved a *worker's* lien under section 70.001 of the Property Code, while Elite claims a *garageman's* lien as provided in section 70.003. Both cases concern the proper notice to be given under Property Code section 70.006 before the lienholder may sell the property subject to the lien.

9. The "lienholder" referred to in this passage is the worker (or garageman), not the holder of a lien created by a security agreement.

### Applicability of the Texas Transportation Code

■ Elite also attempts to establish sufficient notice by relying on the Texas Transportation Code. While it is true that section 683.034 of the Transportation Code provides that notice sent under section 683.012 satisfies the notice requirements under chapter 70 of the Property Code, section 683.012 applies to a notice of abandonment sent by a *law enforcement agency.*[10] *See* Tex. Transp. Code Ann. §§ 683.034(e)(2), .012 (West 1998). Elite, a private company, retained possession of the vehicle and held a sale on its premises. The record reflects that the vehicle was towed from a church parking lot by a private wrecker service at the request of the church. The record does not indicate any law enforcement agency involvement. We conclude therefore that the Transportation Code is inapplicable here.

### Pleadings

■ Elite claims that LSI's pleadings do not support its motion for summary judgment. LSI's trial pleadings allege that Elite failed to give "the requisite notices" pursuant to sections 70.004 and 70.006 of the Property Code. LSI's motion for summary judgment claims that Elite violated section 70.006 by not sending written notice after it had retained the vehicle for 30 days and in failing to maintain possession of the vehicle for 61 days before sale. Although pleadings set out the controversy in a case, they are not considered in determining whether fact issues are expressly presented in summary judgment motions, and they are not summary-judgment proof. *See City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex.1979). The contentions in the written motion for summary judgment are what the court must consider in determining whether to grant the motion. *See id.* The *motion* must be supported by the pleadings on file, and the final judgment must conform to those *pleadings. See Krull v. Somoza,* 879 S.W.2d 320, 322 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Baker v. John Peter Smith Hosp.,* 803 S.W.2d 454, 456 (Tex.App.—Fort Worth 1991, writ denied); *but see Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 495 (Tex.1991) (variance between motion for summary judgment and movant's pleading may be tried by consent and thus waived). As the partial summary judgment conformed to LSI's trial pleadings which in turn supported its motion for summary judgment, we overrule this claim.

### Affirmative Defenses

Elite urges this Court to reverse the district court's partial summary judgment because Elite's answer asserts numerous "affirmative and verified defenses ... and there are genuine issues of material fact as to each element of the affirmative defense [sic]." Elite then sets out eleven so-called affirmative or verified defenses, ten of which address compliance with the notice and sale provisions of the Property Code. We have previously disposed of those issues and decline to revisit them.

■ Elite raises as an additional affirmative defense that LSI is not authorized to do business in this state, but brings forth no summary-judgment proof whatsoever to support this contention. Nor does Elite's brief contain argument or authorities in support of this allegation. *See* Tex.R.App. P. 38.1(h). Elite has thus waived this issue. *See, e.g., Horton v. Horton,* 965 S.W.2d 78, 88 (Tex. App.—Fort Worth 1998, no pet. h.) ("By raising an issue and failing to present any argument or authority on that issue, the party waives that issue.").

### Affidavits

■ Elite argues that the affidavits of Mark Armstrong and Carl Lopez attached to LSI's motion for summary judgment are defective.[11] First, Elite complains about Armstrong's and Lopez's testimony concerning

---

10. A "law enforcement agency" means the Department of Public Safety, the police department of a municipality, the police department of an institution of higher education, a sheriff or a constable. *See* Tex. Transp. Code Ann. § 683.001(3) (West 1998).

11. Mark Armstrong is LSI's attorney in this case, and Carl Lopez is the "Lien Seizure Specialist" and a custodian of records of LSI.

facts related to attorney's fees and damages.[12] However, the district court did not grant summary judgment on either issue. We conclude therefore that this testimony is immaterial to the district court's decision to grant partial summary judgment against Elite on the issue of liability.

Elite also complains that Lopez's affidavit is defective because it contains hearsay. While Elite does not specifically direct us to statements in Lopez's affidavit that constitute hearsay,[13] after examining the record we find that Lopez's affidavit contains only one hearsay statement arguably material to the district court's decision to grant partial summary judgment. Lopez stated that "Elite Towing informed LSI that Elite Towing had 'sold' the Vehicle." Elite's own summary-judgment proof, however, establishes that the vehicle was sold.[14] Therefore, Lopez's testimony is cumulative, and any hearsay is harmless. We find this claim to be without merit.

Finally, Elite argues that Lopez's affidavit is defective because Lopez is an interested witness. Summary judgment may be based on the testimony of an interested witness if that evidence "is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R. Civ. P. 166a(c). Lopez's affidavit sets forth facts material to the district court's finding that Elite failed to comply with the notice requirements of section 70.006 of the Property Code. Elite did not dispute any of these facts or present any controverting proof. In fact, Elite established the same facts in its own summary judgment proof. We find that Lopez's affidavit satisfies the requirements of Rule 166a(c) and was properly considered by the district court as summary-judgment proof.

Therefore, we overrule those issues attacking the partial summary judgment.

### Motion for New Trial

Elite's third issue addresses whether it is entitled to a new trial because it did not receive notice of the August 25 trial setting.

A default judgment should be set aside and a new trial ordered in any case in which the failure of defendant to answer before judgment was not intentional, or the result of conscious indifference on his part, but was due to a mistake or accident; provided the motion for a new trial sets up a meritorious defense and is filed at a time when granting thereof will occasion no delay or otherwise work an injury to the plaintiff. *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex.1939). The *Craddock* standard applies to a post-answer default judgment, as is the case here where Elite answered but failed to appear at the trial. *See Cliff v. Huggins*, 724 S.W.2d 778, 779 (Tex.1987); *Grissom v. Watson*, 704 S.W.2d 325, 326 (Tex.1986). Elite argues that it satisfies *Craddock* and is entitled to a new trial because its failure to attend the trial was not intentional, but was due to an accident in that it did not receive notice of the trial setting.

Notice of a trial setting may be served on a party's attorney of record by certified mail. *See* Tex.R. Civ. P. 21a. Here, the record reflects that LSI properly mailed notice of the trial setting to Elite's attorney, James Mosser. However, George Scheff, an attorney officing in the same building as Mosser, signed the return receipt for the notice. LSI asserts that Scheff was acting on behalf of Mosser, imputing notice of the trial setting to Mosser.

"It is universally recognized that notice to [an] agent is notice to the principal." *Grissom*, 704 S.W.2d at 327. Courts have also recognized that an attorney is deemed to have received notice when the receipt for the notice is signed by that attorney's agent or employee, finding that it would be unjust to allow a party to claim lack of notice based on

---

**12.** Armstrong testified to the type and value of work he did in this case. Lopez testified about LSI's reasoning behind hiring an attorney and to the condition of the vehicle.

**13.** Elite broadly asserts, "The affidavit of CARL LOPEZ is based on hearsay and is not competent summary judgment evidence."

**14.** *See* note 7, *supra*.

the negligence of the party's own attorney or the attorney's employees. *See Bentley v. Rio Grande Dev. Group*, 607 S.W.2d 319, 321 (Tex.Civ.App.—Fort Worth 1980, no writ) (document deemed received by attorney when signed by his agent, attorney's law librarian, because it would be unreasonable to hold opposing party accountable for office procedures and practices of other party); *Mackay v. Charles W. Sexton Co.*, 469 S.W.2d 441, 444–45 (Tex.Civ.App.—Dallas 1971, no writ) (fault or neglect of appellant's secretary to notify him of trial setting cannot be laid on appellee).

■ Therefore, we must determine whether Scheff was Mosser's agent. We begin with the general rule guiding the creation of an agency relationship:

> As between parties to the relation, there must be a meeting of the minds in establishing the agency, and the consent of both the principal and the agent is necessary to create the agency, although such consent may be implied rather than expressed. The principal must intend that the agent act for him, the agent must intend to accept the authority and act on it, and the intention of the parties must find expression in either words or conduct between them.

*Grissom*, 704 S.W.2d at 326 (quoting *First Nat'l Bank v. Farmers & Merchants State Bank*, 417 S.W.2d 317, 330 (Tex.Civ.App.—Tyler 1967, writ ref'd n.r.e.)). An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties. *See Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 760 (Tex.App.—Houston [14th Dist.] 1997, no writ); *Stanford v. Dairy Queen Prods.*, 623 S.W.2d 797, 800–801 (Tex.App.—Austin 1981, writ ref'd n.r.e.).

■ We find that an agency relationship existed between Scheff and Mosser. *See Grissom*, 704 S.W.2d at 326 (agency relationship existed between two law firms when one firm filed answer on behalf of the other in the past in the same case, and notice of docket setting sent to agent/firm was imputed to principal since it was acquired in connection with business transacted for principal). The underlying facts show that Scheff officed in the same building as Mosser. On other occasions during this very case Scheff received and signed postal receipts for Mosser, and there is no evidence that Mosser objected when Scheff signed such documents for him. In fact, though Mosser attached an affidavit to his motion for new trial in which he stated he personally did not receive notice, he never indicated that Scheff was not authorized to receive such notice for him.[15]

■ Elite urges that Scheff was not an employee, agent, partner, associate, or shareholder of Mosser and did not act for the benefit of Mosser in this case. While it is true that a party is not deemed to have received notice when such notice is signed and accepted by one who has no authority to sign it, the facts in this case distinguish it from authority supporting that proposition. For example, in *United National Bank v. Travel Music of San Antonio, Inc.*, 737 S.W.2d 30 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) and *Thompson v. Thompson*, 487 S.W.2d 436 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ), notice was found ineffective when it was signed for by a stranger of the intended addressee and the record did not reveal the identity of the person who signed it. *See United Nat'l Bank*, 737 S.W.2d at 31–32; *Thompson*, 487 S.W.2d at 439. Contrary to these cases, the record here clearly reveals Scheff was no stranger to Mosser. Of compelling significance to our determination of this issue is the fact that Scheff signed other receipts for documents for Mosser *in this case*, and served as the notary on Mosser's affidavit.

In *City of Houston v. Riner*, 896 S.W.2d 317 (Tex.App.—Houston [1st Dist.] 1995, writ denied), the court found that notice had not been received when a security guard, who admitted that she did not have the authority to do so, signed and accepted mail that was addressed to the city attorney who had recently moved into the building where the notice was mailed. *See id.* at 319–320. Unlike *Riner*, there is no similar evidence here that Scheff was not authorized to sign the notice. Scheff's previous acceptance of docu-

---

15. Scheff even acted as Mosser's notary on the affidavit.

ments for Mosser in this case met with no objection. Mosser testified by way of affidavit to his lack of receipt of the notice and final judgment, but significantly failed to state that Scheff was not authorized to receipt for them. The record here reflects a consistent pattern whereby Scheff ordinarily transacted certain business for Mosser, while in *Riner* no such pattern is evident.

In light of the circumstances in this case, we find that Scheff was Mosser's agent and was authorized to accept notice of the trial setting for Mosser. Because notice to Scheff is imputed to Mosser,[16] we conclude that Elite's failure to appear at trial was not due to an accident. To hold otherwise would allow the manipulation of receipt for notices and would undermine and render useless the provisions of Rule 21a. We overrule Elite's third issue.

### Attorney's Fees

■■■ By its fourth issue, Elite challenges the district court's award of attorney's fees on two bases. First, that the evidence does not support a judgment in LSI's favor on LSI's claim of conversion, and second, if so, because conversion is a tort, it will not support an award of attorney's fees. LSI responds that we cannot address this issue because ET failed to preserve it in its motion for new trial. Generally, a point in a motion for new trial is not a prerequisite to a complaint on appeal. *See* Tex.R. Civ. P. 324. In *Wilson v. Dunn,* 800 S.W.2d 833 (Tex.1990), the supreme court compared Rule 324 to then Texas Rule of Appellate Procedure 52(a). The court noted that Rule 324, as amended, was meant to limit use of motions for new trial to preserve error. The court further observed that while Rule 52(a) required all complaints urged on appeal to first be presented to the trial court, it was unclear when complaints could not be raised prior to judgment. This problem, reasoned the court, should be considered in a future amendment to the rules. *See Wilson,* 800 S.W.2d at 837 n. 9.

Effective September 1, 1997, the supreme court amended the Texas Rules of Appellate Procedure. New Rule 33.1 is similar to previous Rule 52(a) in that it requires a complaint to first be presented to the trial court in order to preserve the complaint for appellate review. *See* Tex.R.App. P. 33.1(a). The rule then goes on to directly address the supreme court's concern expressed in *Wilson,* "In a civil case, the overruling by operation of law of a motion for new trial or a motion to modify a judgment preserves for appellate review a complaint *properly made in the motion,* unless taking evidence was necessary to properly present the complaint in the trial court." Tex.R.App. P. 33.1(b) (emphasis added). As Elite's motion for new trial asserts no error in the district court's award of attorney's fees, Elite has not preserved this issue for review by this Court.

However, even if Elite's complaint had been properly preserved, we hold that the district court was correct in awarding LSI attorney's fees.

### *Conversion*

■■■ Before the district court LSI pleaded that when Elite failed to comply with the Property Code prior to selling the vehicle, the sale was void and the transfer of the vehicle constituted an illegal conversion. "Conversion is the 'wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights.'" *Bandy v. First State Bank,* 835 S.W.2d 609, 622 (Tex.1992). Generally, a lienholder[17] may sue for conversion of encumbered property even though the lienholder is not entitled to possession at the time of the conversion. *See* 15 Tex. Jur.3d *Conversion* § 35 (1981); *see also Focke v. Blum,* 82 Tex. 436, 17 S.W. 770, 772 (Tex.1891) ("It is well settled that a mortgagee or lienholder may sue for a conversion of the mortgaged property"); *Collision Ctr. Paint & Body v. Campbell,* 773 S.W.2d 354, 357 (Tex.App.—Dallas 1989, no writ) (finding conversion in favor of purchase money lienholder); *Hart v. Mead-*

---

16. *See Grissom,* 704 S.W.2d at 327 (notice to agent is notice to principal); *Bradford v. McElroy,* 746 S.W.2d 294, 295 (Tex.App.—Austin 1988, no writ) (law imputes to principal whatever is communicated to agent).

17. "Lienholder" in this instance refers to the party holding a lien under a security agreement and not a lien created by a statute.

*ows,* 302 S.W.2d 448, 451 (Tex.Civ.App.—Texarkana 1957, writ ref'd n.r.e.) (lienholder may sue for conversion though not entitled to possession at time of conversion).

■ "If one exercises dominion and control over a car by selling it without having a right to do so, he converts the vehicle." *Kollision King, Inc. v. Calderon,* 968 S.W.2d 20, 23 (Tex.App.—Corpus Christi 1998, no writ) (citing *L.L.M. v. Mayes,* 733 S.W.2d 642, 646 (Tex.App.—San Antonio 1987, no writ)). We have found that Elite did not comply with section 70.006 of the Property Code because it failed to give proper notice prior to selling the vehicle.[18] As Elite did not have the right to sell the vehicle, Elite's unlawful sale constituted conversion.

### Basis for Recovery

■ Elite further asserts that the district court erred in awarding attorney's fees to LSI because attorney's fees may not be awarded for conversion, which it alleges is the basis for LSI's cause of action. Under section 70.008 of the Property Code, "The court in a suit concerning possession of a motor vehicle ... and a debt due on it may award reasonable attorney's fees to the prevailing party." Tex. Prop.Code Ann. § 70.008 (West 1995). This statute does not restrict attorney's fees to a party suing on a debt who wishes to retain possession of a vehicle. *See Kollision King,* 968 S.W.2d at 24.

■ Here, LSI recovered judgment against Elite in conversion because Elite, having sold the vehicle to Elite Wholesales, could not surrender the vehicle. However, as in *Kollision King,* at issue was the right to the possession of the vehicle and the debt secured by the possessory lien. *See id.* Elite could not legally sell the vehicle to discharge the debt against it without giving proper notice to LSI. This it failed to do. We do not believe that the legislature in enacting section 70.008 intended to deprive a successful litigant of reasonable attorney's fees when a garageman has rendered return of a vehicle impossible by disposing of it in violation of the very statute which creates

the right to such fees. We hold that LSI, being the prevailing party, was entitled to attorney's fees under section 70.008 of the Property Code. We overrule Elite's fourth issue.

### Venue

■ In its final issue, Elite contends that venue was not proper in this case. However, Elite has failed to properly preserve this argument. To preserve a complaint for appellate review, the record must show that the complaint was made to the district court by a timely motion and that the district court ruled or refused to rule on the motion. *See* Tex.R.App. P. 33.1(a). This is necessary so that the reviewing court may determine not only if error occurred, but whether this error was reasonably calculated to cause and did cause the rendition of an improper judgment. *See Piotrowski v. Minns,* 873 S.W.2d 368, 370 (Tex.1993); *Christiansen v. Prezelski,* 782 S.W.2d 842, 843 (Tex.1990). The record before us does not contain either a motion to transfer venue or the district court's ruling on same. The docket sheet included in the court's record reflects such a motion was filed and denied. However, we find no request by Elite to include either the motion or order in the court's record brought forward to this Court. Therefore, any objection to venue has been waived.

### CONCLUSION

Having disposed of all of the issues before us, we affirm the district court's judgment.

---

**18.** *See* pp. 639–40, *supra.*