**AFFIRM and Opinion Filed February 3, 2023**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-21-00948-CV

**ROGELIO LOYOLA, Appellant**
**V.**
**TRUIST BANK, Appellee**

**On Appeal from the 429th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 429-00476-2020**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Nowell, and Kennedy
Opinion by Justice Kennedy

This suit involves a dispute over a 2018 Ferrari automobile with various parties claiming rights of possession. Ultimately, the trial court found in favor of Truist Bank, as lienholder, on its conversion and declaratory judgment claims against Rogelio Loyola, who purchased the vehicle from Empire Exotic Motors, Inc. ("Empire") after it acquired same from the original owner, Lou Gigliotti. Loyola appeals the final judgment asserting the evidence is legally insufficient to establish Truist Bank succeeded to the original lienholder's rights and challenging Truist Bank's ability to assert a conversion claim and to recover attorney's fees under the

Declaratory Judgments Act. We affirm the trial court's judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

**BACKGROUND**

In 2018, Gigliotti purchased a 2018 Ferrari 488 GTB from Boardwalk Ferrari for approximately $284,000. SunTrust Bank held a security interest in the Ferrari after financing Gigliotti's purchase of same. In 2019, Gigliotti entered into a transaction with Empire whereby he traded the Ferrari for another vehicle and Empire's promise to pay the balance on the SunTrust Bank loan. When Gigliotti discovered Empire had not paid off the loan as promised, he demanded that Empire return the Ferrari to him. Empire advised Gigliotti that it could not return the Ferrari because it had been sold. Empire refused to disclose the identity of the purchaser to Gigliotti. Gigliotti eventually identified Loyola as the purchaser from his application for a temporary tag. Gigliotti demanded that Loyola relinquish possession of the Ferrari due to Empire's failure to satisfy the SunTrust Bank loan. Loyola refused to do so.

Gigliotti then filed suit against Loyola and his wife Denisse Loyola in Collin County asserting conversion and declaratory judgment claims and later added SunTrust Bank, Empire, and Truist Financial Corporation, as successor-by-merger to SunTrust Bank, to the suit as party defendants. Truist Financial Corporation and Truist Bank, as the purported successors-in-interest to SunTrust Bank, in turn,

asserted a claim against Loyola and his wife for conversion, after Loyola refused Truist Bank's demands to turnover its collateral, and sought declaratory relief.

After he filed an answer in the Collin County suit, and shortly before Gigliotti added Empire, SunTrust Bank and Truist Financial Corporation to the Collin County suit, Loyola sued Empire in Dallas County seeking a declaratory judgment establishing his ownership of the Ferrari. Loyola did not identify SunTrust Bank as a party in interest or otherwise apprise the trial court in the Dallas County lawsuit of a lien on the vehicle. Loyola obtained a default judgment against Empire and then applied for and obtained title to the Ferrari free and clear of the SunTrust Bank lien, which had not been released.[1]

The Collin County case proceeded to a bench trial on October 12, 2021. At that time, the outstanding balance on the SunTrust Bank loan was $201,054.16 and Gigliotti was current on his payments. At trial, Truist Bank's representative, Lamar Mack, testified, "I work at Truist Financial Services. Truist Bank." In response to a question asking Mack to explain how SunTrust is now Truist, Mack stated, "On December 9th of 2019, there was a legal day one where BB&T and SunTrust merged

---

[1] Truist Bank filed a petition for bill of review in the Dallas County case. The trial court denied Truist Bank's petition, and Truist Bank filed a notice of appeal. That appeal is currently pending before this Court with Truist Bank asserting it had standing to bring the bill of review, arguing the trial court erred in denying the bill of review because Truist Bank was not provided notice of the Dallas County case and it raised a meritorious defense, and complaining about the lack of findings of fact and conclusions of law. *Truist Bank v. Loyola*, 05-21-00206-CV.

and subsequently formed banks, Truist Financial, Truist Wealth."[2]  Truist Bank's counsel then asked, "And so, the rights that SunTrust had prior to that merger now belonged to Truist; is that right?"  Mack responded, "That's correct."  The following exchange then took place:

> Q.  To your knowledge, is Mr. Gigliotti a customer of Truist Bank?
> A.  According to the records that we have on file, I would say yes.
> Q.  Are you familiar with his account with Truist Bank?
> A.  I perused his account prior to my testimony today, yes.
> Q.  And please describe Mr. Gigliotti's relationship with Truist Bank.
> A.  We have (inaudible) on file for a 2018 Ferrari where the proceeds were approximately $284,000.

A retail installment contract for the sale of the Ferrari to Gigliotti was then introduced into evidence, and the following exchange took place between Truist Bank's counsel and Mack:

> Q.  And was this contract actually assigned to SunTrust Bank?
>
> A.  Yes, it was.
>
> . . .
>
> Q.  And you see under Section 2, Paragraph C, called Security Interest?
>
> A.  Yes.
>
> . . .
>
> Q.  Yes. Just that sentence and then the number one after it.
>
> A.  Okay.  The vehicle, including all accessories and parts, now or later attached and any other goods financed in this contract.
>
> Q.  Okay.  So, the sentence before that says, To secure all that you owe us on this contract and all your personal promises, you give a security interest in, and then all of those things you just listed is that right?

---

[2] Loyola contends Mack's testimony established two banks were created as a result of the merger between SunTrust Bank and BB&T; namely Truist Wealth and Truist Financial.  We disagree with Loyola's construction and interpretation of Mack's testimony.  It appears wealth and financial services entities were created as a result of the merger in addition to Truist Bank.

A.  That's correct.

Q.  So, as a result of this contract, did Truist take a security interest in this 2018 Ferrari that is the subject of this contract?

A.  Yes.  We funded and executed a contract and perfected our lien.

Q.  How did you perfect your lien?

A.  Through the state DMV.

. . .

Q.  And how do you know that the state has granted you that lien position?  Is there documentary evidence?
A.  There is an electronic record with the state.  There's an electronic record in a database called Dealertrack, and then there's also a paper title that was requested.
Q.  On that paper  - - so on the paper title, does that paper title show that the lender in this case, Truist, formerly Suntrust, has a lien?
A.  I saw that in one of those exhibits[3] - - I think  - -

. . .

Q.  Okay.  So, what was marked as Plaintiff's Exhibit 2, do you recognize this document?
A.  Yes.

. . .

Q. Okay.  So, when it says, First Lienholder, Suntrust Bank, what does that mean?
A.  That means that it was perfected, that the liens cannot be without proper - -  (Zoom interruption.)
Q.  And has Truist ever released this lien that's reflected on this title?
A.  We have not.

. . .

Q.  But is [Gigliotti's] loss of possession of this car a default on this contract?  Like if you have knowledge that he does not have possession, outside of the fact you - - your collections efforts, is that a default on this contract?
A.  Yes, yes.  If you are talking about possession, yes.  That's correct.

No one objected to this testimony and no other party questioned Mack

regarding the SunTrust Bank/BB&T merger and Truist's lien assertion.  The trial

---

[3] The Texas Certificate of Title identifying Gigliotti as the owner of the Ferrari and SunTrust Bank as the First Lienholder was admitted into evidence.

court rendered judgment for Truist Bank on its conversion claim, ordering Loyola to place the Ferrari in Truist Bank's possession within 5 days of the judgment, awarding Truist Bank actual damages of $284,322.43 if Loyola failed to place the Ferrari in Truist Bank's possession as ordered, and awarding Truist Bank exemplary damages of $100, in connection with Loyola's procurement of title to the vehicle without Truist Bank's lien, and attorney's fees of $50,429.54. The judgment declared that Truist Bank holds a valid, unreleased lien on the Ferrari, that Truist Bank's right to possession of the Ferrari is superior to any right of possession of Loyola, that any title Loyola acquired to the Ferrari is subject to Truist Bank's lien, that the title issued to Loyola be revoked by the Department of Motor Vehicles, and that Truist Bank's lien be restored and perfected on the Ferrari's title.

Prior to filing his notice of appeal, Loyola requested findings of fact and conclusions of law. Among the findings and conclusions the trial court made, are the following:

- Boardwalk Ferrari assigned its interest in the Contract to Truist Bank, successor in interest by merger to SunTrust Bank.

- Truist Bank financed the purchase in the amount of $284,322.43, in exchange for a first lien on the Ferrari reflected in the 2018 Texas Certificate of Title ("Original Title").

- In 2019, Gigliotti placed the Ferrari in the possession of Empire Exotic Motors, Inc. ("Empire"), as part of a sales transaction.

- In 2019, Empire transferred the Ferrari to Rogelio Loyola as part of a separate sales transaction.

- The Contract has not been repaid, and a balance of $201,054.16 remains due as of October 12, 2021.

- Rogelio Loyola has possession of the Ferrari.

- Truist Bank has not released its lien on the Ferrari.

- Truist Bank demanded possession of the Ferrari from Rogelio Loyola by virtue of this lawsuit and by letter dated July 8, 2021.

- Rogelio Loyola has refused to place the Ferrari in Truist Bank's possession.

- Plaintiff filed this lawsuit against Rogelio Loyola on January 27, 2020.

- This lawsuit placed Rogelio Loyola on notice of Truist Bank's unreleased lien on the Ferrari.

- Truist Bank held a properly perfected lien on the Ferrari in 2019 and has standing to bring a conversion claim . . . as a first lienholder, Truist Bank was entitled to possession of the Ferrari in 2019 . . . Loyola assumed and exercised dominion and control over the Ferrari in 2019 without Truist Bank's authorization. . . Truist Bank demanded possession of the Ferrari and Rogelio Loyola has refused to place Truist Bank in possession of the Ferrari. Alternatively, the Court finds that the demand and refusal elements are not required because Rogelio Loyola committed an act of conversion by taking possession of the Ferrari, causing the Dallas court to sign a default judgment purporting to convey to him title to the Ferrari free of Truist Bank's lien, and causing the DMV to issue the Second Title that did not include Truist Bank's lien.

### DISCUSSION

### I. Sufficiency of the Evidence to Establish Truist Bank Succeeded to SunTrust Bank's Lien Rights

In his first issue, Loyola asserts "Truist Financial Corporation" failed to introduce legally sufficient evidence of its right to sue on or enforce SunTrust's lien.

As an initial matter, we note, that the trial court found Truist Bank succeeded to SunTrust Bank's lienholder rights and rendered judgment in favor of Truist Bank, not Truist Financial Corporation.

In an appeal from a bench trial, the trial court's findings of fact have the same weight as a jury verdict. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994). We review a trial court's findings of fact under the same legal sufficiency of the evidence standards used when determining whether sufficient evidence exists to support an answer to a jury question. *Id.*

In conducting a legal sufficiency review, we credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We consider the evidence in the light most favorable to the finding and indulge every reasonable inference that would support it. *Id.* at 822. We will sustain a no-evidence challenge only if (1) the record reveals a complete absence of evidence of a vital fact, (2) the only evidence offered to prove a vital fact is barred from consideration by rules of law or evidence, (3) the evidence offered to prove a fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *See id.* at 810. If more than a scintilla of evidence exists to support the finding, the legal sufficiency challenge fails. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005).

When Gigliotti added the successor-in-interest to SunTrust Bank to the lawsuit, he identified that entity as Truist Financial Corporation. Thereafter, Truist Financial Corporation *and* Truist Bank, by first amended cross claims, and as successors-in-interest to SunTrust Bank, asserted claims against the Loyolas. The parties present at trial were Lou Gigliotti, Truist Bank, and Rogelio and Denisse Loyola.

Truist Bank's representative, Lamar Mack, testified at trial and established that the bank, as well as Truist Wealth and Truist Financial, were formed by the merger of SunTrust Bank and BB&T in 2019 and that, as a result of the merger, Truist holds all the rights previously held by SunTrust Bank. The evidence further established that at the time of the merger, SunTrust Bank had a purchase money lien on the Ferrari. Throughout trial, the parties used the terms "Truist" and "Truist Bank" interchangeably. Mack established that Gigliotti has an account with Truist Bank that concerns a 2018 Ferrari and an original loan of approximately $284,000. He further testified that Truist Bank had not released the lien on the Ferrari.

We conclude this evidence is more than a mere scintilla to support the trial court's findings:

- Boardwalk Ferrari assigned its interest in the Contract to Truist Bank, successor in interest by merger to SunTrust Bank.

- Truist Bank [as successor-in-interest to SunTrust Bank] financed the purchase in the amount of $284,322.43, in exchange for a first lien on the Ferrari reflected in the 2018 Texas Certificate of Title ("Original Title").

–9–

- Truist Bank has not released its lien on the Ferrari.

- Truist Bank held a properly perfected lien on the Ferrari in 2019.

Accordingly, we overrule Loyola's first issue.

## II. Conversion – Right to Possession

To establish liability for conversion, a plaintiff must prove it has a sufficient interest in the property, the defendant exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights, and the defendant refused plaintiff's demand for the return of the property. *See John Deloach Enters., Inc. v. Telhio Credit Union, Inc.*, 582 S.W.3d 590, 595 (Tex. App.—San Antonio 2019, no pet.).

In his second issue, Loyola contends the trial court erred in rendering judgment on Truist Bank's conversion claim because Truist Bank failed to show it was entitled to possession of the Ferrari. More particularly, Loyola contends Truist Bank may not prevail on a conversion claim because Gigliotti was current on his payments at the time of trial and, thus, claims Loyola, Truist Bank was not entitled to repossess the vehicle.

Loyola's argument discounts the legal authority recognizing that a first lienholder generally has sufficient interest in the property to sue a third party for conversion even if the lienholder does not have a greater right to possession than the owner. *See John Deloach*, 582 S.W.3d at 596 (purchase money lienholder could sue third-party storage company for conversion for refusing to return collateral vehicle

even though lienholder did not have greater right to possession than owner); *Elite Towing, Inc. v. LSI Fin. Grp.*, 985 S.W.2d 635, 644 (Tex. App.—Austin 1999, no pet.) (lienholder had a conversion claim against towing company that sold the purchase money lienholder's collateral without notice). Instead, Loyola relies on the Houston Court of Appeals decision in *FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 482 (Tex. App.—Houston [14th Dist.] 2002, no pet.), a case involving a statutory lien on trust property, to assert that in order to bring a conversion claim, Truist Bank had to establish it owned, possessed, or had the right to immediate possession of the Ferrari, and contends that Truist Bank failed to so. Notwithstanding the fact that Truist Bank established Gigliotti defaulted on his agreement by transferring ownership of the Ferrari without Truist Bank's written consent, we conclude the facts presented here align with the San Antonio and Austin Courts of Appeals decisions in *John Deloach* and *Elite Towing*, and, therefore, we adopt their approach here.

Truist Bank, as a first lienholder, had sufficient interest in the Ferrari to sue Loyola for conversion and was not required to prove that Gigliotti had breached the financing agreement or that it had a right to immediate possession of the Ferrari under the financing agreement. *See John Deloach*, 582 S.W.3d at 596; *Elite Towing*, 985 S.W.2d at 644; *see also Moore v. Carey Bros. Oil Co.*, 269 S.W. 75, 78 (Tex. 1925) ("It is well settled that a lienholder may sue for a conversion of the property on which the lien exists."). Accordingly, we overrule Loyola's second issue.

## III. Attorney's Fee Award Under the Declaratory Judgments Act

In his third issue, Loyola urges, if this Court reverses the declaratory judgment, it must also reverse the attorney's fee award.

The Declaratory Judgments Act provides that a court of record within its jurisdiction has the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed and allows the court to award costs and attorney's fees as are equitable and just. TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.003(a); 37.009. We review a trial court's award of attorney's fees under the Declaratory Judgments Act for abuse of discretion. *Ridge Oil Co. v. Guinn Invs., Inc.*, 292 S.W.3d 660, 669 (Tex. 2009).

The trial court's judgment included the following declarations:

- Truist Bank holds a valid, unreleased first lien on the Ferrari.

- Truist Bank's right to possession of the Ferrari is superior to any right to possession of Rogelio Loyola.

- Any title Rogelio Loyola acquired to the Ferrari is subject to Truist Bank's lien.

- Title issued to Rogelio Loyola to the Ferrari be revoked by the DMV.

- Truist Bank's lien on the Ferrari be restored and perfected on the Ferrari's title.

Aside from Loyola's arguments in connection with his first two issues, which we resolve against him, he does not address the merits of these declarations and specifically demonstrate why they should be set aside on appeal. Nevertheless,

–12–

having reviewed the record in this case, we do not find any basis upon which to reverse any of the trial court's declarations, nor do we conclude the trial court abused its discretion in awarding Truist Bank attorney's fees. We overrule Loyola's third issue.

## CONCLUSION

We resolve Loyola's issues against him and affirm the trial court's judgment.

/Nancy Kennedy/
NANCY KENNEDY
JUSTICE

210948F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ROGELIO LOYOLA, Appellant

No. 05-21-00948-CV     V.

TRUIST BANK, Appellee

On Appeal from the 429th Judicial District Court, Collin County, Texas Trial Court Cause No. 429-00476-2020.
Opinion delivered by Justice Kennedy. Justices Partida-Kipness and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee TRUIST BANK recover its costs of this appeal from appellant ROGELIO LOYOLA.

Judgment entered this 3rd day of February 2023.