W. S. HART & C. R. McFarland, d/b/a Hart & McFarland, et al., Appellants,

v.

Beatrice Aven MEADOWS, Administratrix, et al., Appellees.

No. 6975.

Court of Civil Appeals of Texas.

Texarkana.

June 27, 1957.

Rehearing Denied July 25, 1957.

 

J. R. Cornelius and Joe McCasland, Jefferson, for appellants.

Mahlon L. Walters, Jefferson, and Sidney Lee, Texarkana, for appellees.

CHADICK, Chief Justice.

The plaintiff below, Beatrice Aven Meadows, Administratrix of the estate of Robert Sims Meadows, sued the Mid-Gulf Oil & Refining Company, Inc., for breach of contract under an assignment of an oil, gas and mineral lease to a tract of land in Marion County, and W. S. Hart and C. R. McFarland for conversion of certain machinery, equipment and supplies used and useful in the production of oil and gas from such tract. The Vivian Branch of the First National Bank of Shreveport, Louisiana, claiming a first and prior lien on the personalty, was permitted to intervene. After a jury trial judgment was entered dismissing the Bank and awarding the plaintiff a joint and several recovery of $6,000 against Hart, McFarland and Mid-Gulf and an additional $12,872.71 judgment against Mid-Gulf. Only Hart, McFarland and the Bank have appealed. The judgment of the trial court is affirmed.

The facts necessary to an understanding of the disposition made of this case are that in 1947, R. S. Meadows acquired an oil, gas and mineral lease on the Benefield Survey in Marion County which contained the following provision:

"And it is further understood by the parties hereto that if the lessee and/or his assigns shall fail to produce oil and/or gas for sixty (60) consecutive days, the same shall constitute an abandonment of said leasehold interest and the same shall revert to the lessor herein without further notice or action."

August 18, 1952, Meadows as party of the first part assigned the lease to Charles

E. Wimberly as party of the second part incorporating in the assignment this provision:

"The said Party of the Second Part further covenants and agrees not to plug the well or wells or abandon same until the said Party of the First Part shall have first received the full sum of Twenty Thousand ($20,000.00) Dollars as herein set out and at any time prior to the full payment of said sum of Twenty Thousand ($20,000.00) Dollars Party of the Second Part desires not to operate said lease any longer, then and in such event Party of the Second Part agrees to re-assign and re-convey said lease to Party of the First Part including all machinery, equipment, or supplies used or obtained in connection with said lease which shall include all machinery, equipment, and supplies placed on said lease by Party of the Second Part; it being expressly understood and agreed that any and all oil runs or the proceeds thereof received by said Meadows prior to such re-assignment and re-conveyance shall be retained by said Meadows without being required to account to Party of Second Part therefor."

Shortly thereafter, on August 23, 1952, Wimberly assigned the lease to Mid-Gulf using language requiring the Oil Company to assume the quoted contractual obligations of the Meadows assignment. The lease was operated by Mid-Gulf for an undisclosed time and was finally abandoned. August 13, 1954, Mid-Gulf suffered a judgment to be taken against it as a consequence of which its interest in the lease was levied upon and sold at sheriff's sale. At this sale M. H. Kibler bought the interest so sold for $6,050. C. R. McFarland was present at the sale. Prior to sale he had his attorney examine the records and advise him respecting title to the interest levied upon. The various assignments were recorded at the time and the agreement to reconvey and reassign was actually and constructively known to him. Mr. McFarland made other investigations including a discussion of the lease with counsel for the administratrix and on September 10, 1954, he and W. S. Hart, as lessees, took an oil, gas and mineral lease to the tract from J. H. Benefield, Sr., and then on September 18th following, they, by bill of sale from M. H. Kibler, received the machinery, equipment and supplies involved in this suit. The bill of sale recited a consideration of $10, but in his testimony Mr. McFarland testified that $6,050 was paid. Hart and McFarland were producing the lease at the time of trial.

The parties concede that Mid-Gulf forfeited its lease by failure to produce oil for the period specified and paid only $1,127.29 of the $20,000 payment reserved in the assignment from Meadows to Wimberly and failed to reassign or reconvey to Meadows or his legal representatives the lease and the machinery, etc.

■ Besides asserting there that there is no pleading and no evidence, or at least insufficient evidence to support the judgment, the appellants' points are directed at the proposition that the judgment was erroneous because the plaintiff did not have an interest in and right of possession to the personalty sufficient to maintain an action for its conversion.

To determine this question, it should be kept in mind that the reassignment and reconveyance provision of the contract (Meadows to Wimberly assignment) is an agreement to convey a title to an interest in real property as well as title to personal property. Both are a part of a single contract and both are inseparably interwoven in the transaction. It is not possible to determine from the contract what the worth of the lease is separated from the worth of the personal property or how much of the $20,000 reserve payment was meant for the lease and how much for the machinery, etc. In Amsler v. Cavitt, Tex.Civ. App., 210 S.W. 766, wr. ref., it was held

that the remedy of specific performance was available to require the performance of a contract where both the realty and personalty were the subject of the contract. In Citizens' Water Co. v. McGinley, Tex. Civ.App., 175 S.W. 457, no writ history, there was an agreement to reconvey land if a water well was not drilled. On failure to drill, it was said that this provision, if regarded as a condition subsequent, was breached, and the court held the grantor might make re-entry and revoke the grant. Or if the provision was considered as an agreement to reconvey upon certain contingencies (if a condition subsequent and an agreement to reconvey upon contingencies may be differentiated) then the grantor or his assigns would have a right to enforce the contract to reconvey by specific performance. In addition to the reasoning and the authority inherent in the cases mentioned, in determining the nature of the property and possessory right of the plaintiff reliance also may be had upon the equitable maxim that equity regards that as done which ought to have been done. Surely, it would not be argued that the plaintiff below could not have properly filed an appropriate equitable action compelling the reassignment of title to the real and personal property when Mid-Gulf failed to continue production operations. Mid-Gulf having breached its obligation and failed to reconvey title, a court of equity would have compelled by specific performance a reassignment of the lease and delivery of title and possession of the machinery, etc.

While the term "equitable title" is generally associated with a title to real property, there appears to be no sound reason why a property right and ownership in personal property might not be so described. In Henshaw v. Texas Natural Resources Foundation, Tex.Civ.App., 212 S.W.2d 241, 242, wr. ref. n.r.e., a case concerned with land, it is said: "An equitable title in Texas has been defined as 'the present right to the legal title.'" By analogy it

can be said that the interest of the Meadows estate in the personalty was a present right to the legal title and possession of the machinery, etc., in the nature of an equitable title.

Consideration of the foregoing authorities and reasoning results in the conclusion that plaintiff in this suit had a sufficient property interest and right of possession in the machinery, equipment and supplies to support an action for conversion. In 42 Tex.Jur., p. 530, Sec. 21, on the basis of authorities cited in the footnotes, it is stated:

"In some of the cases it is simply said that in order to maintain trover a plaintiff must have had some right or title to the chattel in question at the time of the alleged conversion. In other decisions it is declared that the plaintiff must have had either a general or special ownership and, in addition, either possession or the right to immediate possession of the property in question."

and at page 533, Sec. 23, considering interests in personalty somewhat different but of lesser title and right of possession than shown here, it is said:

"It is well settled that a chattel mortgagee, pledgee, landlord, or other lienholder may sue for a conversion of the encumbered property and recover its value to the extent of his lien, though he was not entitled to the possession at the time of the conversion."

Having concluded that the action for conversion was a proper remedy, the appellants', Hart and McFarland's, points of error do not show merit and are respectfully overruled. The evidence is sufficient to support the judgment under the pleading and proof.

■ The judgment against Hart and McFarland is for money and does not attempt to fix the priority of liens, foreclose

on or otherwise effect the machinery, equipment and supplies which the Bank has under mortgage as security for its loan and the Bank is in no wise touched or its security lessened by this judgment. Dismissal left the Bank in the exact position it occupied before the suit began. The Bank is not shown to have a justiciable interest in the litigation and its dismissal from the suit was proper. 32 Tex.Jur., 12, Sec. 8.

Finding no reversible error, the judgment of the trial court is affirmed.