

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-17-00820-CV

**JOHN DELOACH ENTERPRISES, INC.** d/b/a Bexar Towing and Ouachita Enterprises, Inc.
d/b/a Bexar Auto Storage,
Appellants

v.

**TELHIO CREDIT UNION, INC.**,
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 2017CV00279
Honorable Jason Wolff, Judge Presiding

Opinion by:  Luz Elena D. Chapa, Justice

Sitting:  Luz Elena D. Chapa, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: March 13, 2019

REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART;
DISMISSED IN PART

This is an appeal from a judgment in favor of Telhio Credit Union, Inc. in a suit for

conversion. We hold the evidence is legally sufficient to support the trial court's finding of liability

for conversion against appellant Ouachita Enterprises, Inc. d/b/a Bexar Storage. We further hold

the evidence is legally insufficient to support the amount of damages awarded; however, because

some evidence supported an award of damages, we reverse the judgment against Bexar Storage

and remand the case for a new trial on the conversion claim. We reverse and render a take nothing

judgment on the claim for attorney's fees because Telhio did not establish a legal basis for a fee award. In addition, we dismiss the appeal of John DeLoach Enterprises, Inc. d/b/a Bexar Towing because no judgment was rendered against it and it has not shown any justiciable interest in appealing the judgment.

## BACKGROUND

On January 20, 2016, John DeLoach Enterprises, Inc. d/b/a Bexar Towing ("Bexar Towing") towed a 2009 Nissan Versa from the parking lot of an apartment complex at the request of the complex's management. The car was towed to Ouachita Enterprises Inc. d/b/a Bexar Storage's ("Bexar Storage") vehicle storage facility. The Nissan had Texas license plates and a Texas registration sticker. Bexar Storage requested and received information from the Texas Department of Motor Vehicles Titles and Registration Division ("TDMV") that the car had been registered in Bexar County on August 19, 2014 "for registration purposes only" and that the registered owner of the car was Samuel Johnson. No information was provided as to whether there was a lienholder. Bexar Storage sent certified letters to Samuel Johnson on January 22, 2018 and February 9, 2018, notifying him the car had been towed and details on how it could be recovered. Bexar Storage was never contacted by Mr. Johnson or by anyone on his behalf.

Telhio Credit Union, Inc. held a lien on the Nissan. Telhio hired a recovery firm, which located the Nissan at Bexar Storage. Telhio contacted Bexar Storage in May 2016, seeking immediate release of the vehicle. Bexar Storage demanded payment for towing and accrued storage fees of approximately $2,500. Telhio advised it would only pay storage fees reflecting a period of five days, contending that the Texas Vehicle Storage Facility Act prohibited Bexar Storage from charging more because it had not provided notice of the impoundment to Telhio as the primary lienholder. Telhio made several attempts to obtain release of the car from Bexar Storage, including a demand letter dated May 16, 2016, in which it tendered payment of the towing

charges and fees for five days of storage and demanded release of the vehicle. Bexar Storage did not respond to the letter or release the vehicle.

Telhio sued Bexar Towing and Bexar Storage in justice court, alleging violations of the Texas Occupations Code, negligence per se, and conversion. The justice court rendered judgment for Telhio, and the defendants appealed to the county court at law. After a de novo bench trial, the trial court rendered judgment against Bexar Storage for conversion. The court awarded Telhio damages in the amount of $4,622.30 (after applying offsets and credits for authorized fees in the amount of $352.70) and attorney's fees in the amount of $15,744.50, together with interest and costs. The court rendered a take nothing judgment in favor of Bexar Towing. The court subsequently signed findings of fact and conclusions of law. The defendants' motion for new trial was overruled by operation of law.

Both Bexar Towing and Bexar Storage appeal the judgment. In four issues, they challenge the legal sufficiency of the evidence to support the finding of liability for conversion and the damage award and challenge the legal basis for an award of attorney's fees.

## BEXAR TOWING'S STANDING TO APPEAL

We initially address Telhio's contention that Bexar Towing has no standing to appeal the judgment and should be dismissed from the appeal. "[A]n appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000). "While a party of record is generally entitled to appellate review, the right of appeal rests only in an aggrieved party to a lawsuit." *Jay Kay Bear Ltd. v. Martin*, No. 04-14-00579-CV, 2015 WL 6736776, at *5 (Tex. App.—San Antonio Nov. 4, 2015, pet. denied).

A party is not "aggrieved" unless it has a justiciable interest in the judgment and is injuriously affected or prejudiced by it. *Id.*; *see also Torrington*, 46 S.W.3d at 844. The trial court

rendered a take-nothing judgment in Bexar Towing's favor. Bexar Towing has not asserted or shown that any error in the judgment against Bexar Storage has injuriously affected Bexar Towing or prejudiced it. And Bexar Towing did not otherwise respond to Telhio's argument that Bexar Towing lacked standing to appeal the judgment. We hold John DeLoach Enterprises, Inc. d/b/a Bexar Towing has no justiciable interest in this appeal and we dismiss its appeal.

## CONVERSION

To establish liability for conversion a plaintiff must prove it has a sufficient interest in the property, the defendant exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights, and the defendant refused plaintiff's demand for the return of the property. *See Akin v. Santa Clara Land Co.*, 34 S.W.3d 334, 344 (Tex. App.—San Antonio 2000, pet. denied). A successful plaintiff may recover the fair market value of the property at the time and place of the conversion. *See Imperial Sugar Co v. Torrans*, 604 S.W.2d 73, 74 (Tex. 1980) (per curiam). Bexar Storage challenges the trial court's judgment for conversion in three issues:

> 1. Telhio [] could not have prevailed on its conversion claim because there is no evidence to show that it was entitled to possession of the vehicle at issue in this litigation.
>
> 2. Telhio [] could not have prevailed on its conversion claim because it failed to introduce any competent evidence that [Bexar Storage] exercised dominion over the vehicle in an unlawful and unauthorized manner.
>
> 3. There is legally insufficient evidence to support the compensatory damages awarded in the judgment.

When the trial court has made findings of fact and a reporter's record has been filed, we review the findings for legal and factual insufficiency of the evidence using the same standards we apply to jury findings. *See BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A party who "attacks the legal sufficiency of an adverse finding on an issue on which it

did not have the burden of proof . . . must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Pena*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam). If there is more than a scintilla of evidence to support the trial court's finding, the no-evidence challenge fails and must be overruled. *Id.* In reviewing a finding for legal sufficiency, we consider the evidence in the light most favorable to the finding, crediting favorable evidence if a reasonable factfinder could and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). "The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *Id.*

We review the trial court's legal conclusions, including its construction of statutes, de novo. *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003). When we interpret a statute, our principal task is to ascertain the legislature's intent. *Id.* We first look to the statute's plain language, and if the statute's language is unambiguous, we interpret it according to its plain meaning. *Id.*

### Telhio's interest in the vehicle

Bexar Storage first argues there is no evidence to support the trial court's finding Telhio was the primary lienholder on the 2009 Nissan and no evidence Telhio had a legal right to possess the car.

There is evidence in the record that the 2009 Nissan was continuously titled in Ohio from 2009 through 2016; that Samuel Johnson registered the car in Ohio as the owner in January 2012; and that the Ohio Bureau of Motor Vehicles' title information identifies Telhio Credit Union as the first lienholder on the Nissan. There is also evidence that Telhio was attempting to repossess the Nissan in March 2016 and hired a company to locate it. This evidence is more than a scintilla in support of the trial court's finding that Telhio was the primary lienholder on the Nissan.

Bexar Storage argues that even if Telhio was shown to be the lienholder, Telhio may not prevail on a conversion claim because Telhio did not introduce the finance contract or any evidence Johnson had defaulted, and it thus did not present any evidence it was entitled to repossess the car. However, a first lienholder generally has sufficient interest in the property to sue a third party for conversion even if the lienholder does not have a greater right to possession than the owner. *See Elite Towing, Inc. v. LSI Fin. Group*, 985 S.W.2d 635, 644-45 (Tex. App.—Austin 1999, no pet.); *Hart v. Meadows*, 302 S.W.2d 448, 457 (Tex. Civ. App.—Texarkana 1957, writ ref'd n.r.e.). Telhio therefore was not required to prove that Johnson had breached the financing agreement or that Telhio had a right to immediate possession of the Nissan under that financing agreement in order to sue Bexar Storage for conversion. *See Moore v. Carey Bros. Oil Co.*, 269 S.W. 75, 78 (Tex. 1925) ("It is well settled that a lienholder may sue for a conversion of the property on which the lien exists."). We therefore overrule Bexar Storage's first issue.

### *Unlawful and unauthorized exercise of dominion*

In its second issue, Bexar Storage argues there is no evidence that it exercised dominion over the car in an unlawful and unauthorized manner. The trial court found Bexar Storage exercised dominion over the Nissan in an unlawful and unauthorized manner by demanding Telhio pay unlawful and unauthorized storage fees before it would release the car. Bexar Storage argues the trial court misconstrued the law and contends the fees it charged were authorized by law.

The Texas Vehicle Storage Facility Act, chapter 2303 of the Occupations Code, regulates the storage of vehicles towed without the consent of the owner at "vehicle storage facilities." TEX. OCC. CODE §§ 2303.001, 2303.003(a). In relevant part, Chapter 2303 authorizes the facility operator to charge the owner specified fees, including a daily storage fee of between $5 and $20 for each day the vehicle is stored at the facility. *See id.* § 2303.155(b)(3)(A). However, for vehicles registered in Texas, the storage facility operator may not charge a daily storage fee for

more than five days before it gives the statutorily required notice. *Id.* § 2303.155(e)(1). After the required notice is given, the storage facility operator may charge the daily storage fee for "each day the vehicle is in storage . . . until the vehicle is removed and all accrued charges are paid." 2303.155(e)(3). A lienholder who repossesses the vehicle is liable for the amount of authorized fees owed to the vehicle storage facility, regardless of whether the fees accrued before or after the vehicle was repossessed. *Id.* § 2303.156(a).

The dispute in this case is whether the notice Bexar Storage sent to the owner satisfied the requirements of Chapter 2303. Section 2303.151(a) provides:

> The operator of a vehicle storage facility who receives a vehicle that is registered in this state and that is towed to the facility for storage shall send a written notice to the registered owner and the primary lienholder of the vehicle not later than the fifth day after the date but not earlier than 24 hours after the date the operator receives the vehicle.

*Id.* § 2303.151(a). The vehicle storage facility may provide the statutory notice to the registered owner and the primary lienholder by publication in a newspaper of general circulation in the county where the vehicle is stored if:

> (1) the vehicle does not display a license plate or a vehicle inspection certificate indicating the state of registration;
>
> (2) the identity of the registered owner cannot reasonably be determined by the operator of the storage facility; or
>
> (3) the operator of the storage facility cannot reasonably determine the identity and address of each lienholder.

*Id.* § 2303.152(e).

The evidence at trial established that the Nissan had Texas license plates and an expired Texas registration sticker. On the day the car was towed, Bexar Storage submitted a search request to the TDMV for information on the registered owners and lienholders of the car. Bexar Storage received a response that identified the vehicle and stated it had been registered in Bexar County

on August 19, 2014 "for registration purposes only." The response identified Samuel Johnson, with a San Antonio address, as the owner of the Nissan and stated the previous owner was Samuel Johnson of Columbus Ohio. The response did not contain any information about who held title, in what state the car was titled, or whether there was a lienholder. Bexar Storage sent certified letters to Samuel Johnson on January 22, 2018 and February 9, 2018, notifying him the car had been towed and providing the information required by statute. *See id.* § 2303.153. Bexar Storage did not send notices to anyone else or give notice by publication, and it did nothing more to ascertain whether there was a lienholder.

In Texas, registration of a vehicle "for registration purposes only" is available so that the owner of a vehicle titled in another state may register the vehicle in Texas without applying for a negotiable Texas title. Texas Department of Motor Vehicles *Motor Vehicle Title Manual* ¶ 6.5. The owner of a vehicle last registered or titled in another state may apply for this type of registration without obtaining a Texas title if the owner cannot or does not wish to relinquish the negotiable out-of-state title. *Id.*; 43 TEX. ADMIN. CODE § 217.24; *see* TEX. TRANSP. CODE § 502.043(c). The owner must present proof of ownership, such as the previous out-of-state registration receipt, and complete a form. 43 TEX. ADMIN. CODE § 217.24. The form requires disclosure of lienholders only if the lienholder is disclosed on the out-of-state evidence of ownership. *Id.* § 217.24(b)(2); *see Motor Vehicle Title Manual* ¶ 6.5, "Out of State Evidence of Ownership." Presentation of the application and proof of ownership authorizes the issuance of a registration receipt "for registration purposes only," "but does not authorize the department to issue a title." TEX. TRANSP. CODE § 502.043(c-1). "The receipt issued … may serve as proof of registration and evidences title to a motor vehicle for registration purposes only, but may not be used to transfer any interest or ownership in a motor vehicle or to establish a lien." 43 TEX ADMIN. CODE § 217.24(b)(1). At trial, John DeLoach, the owner of Bexar Storage, acknowledged he

understood the purpose of a registration "for registration purposes only" and that a person would use this type of registration if the vehicle were titled in another state and the person registering the vehicle did not have title.

The evidence introduced at trial included a complete title history from the TDMV and a report generated by the Ohio Bureau of Motor Vehicles in response to a vehicle title inquiry. The TDMV records reflect Samuel Johnson applied for registration for "registration purposes only" in August 2014. Johnson's application was supported by a copy of State of Ohio certificate of registration issued in January 2012. The Ohio certificate does not contain any information about lienholders. The records disclose Johnson previously lived in Ohio and the car was previously registered in Ohio, but nothing in the Texas title record disclosed where the car was titled or whether there were any lienholders. The Ohio Bureau of Motor Vehicles title report reflects the Nissan had been titled in Ohio since 2009 and the holder of the first lien was Telhio Credit Union.

The trial court concluded the language of section 2303.151, stating that the "operator of a vehicle storage facility who receives a vehicle that is registered in this state and that is towed to the facility for storage *shall* send written notice to the registered owner *and* the primary lienholder" imposed a mandatory duty on Bexar Storage to provide written notice to Telhio, the primary lienholder. *See* TEX. OCC. CODE § 2303.151(a) (emphasis added). Under the Code, if Bexar Storage was unable to "reasonably determine the identity and address of each lienholder," it could have satisfied its mandatory duty by giving notice by publication. *See id.* § 2303.152. The court found that because Bexar Storage failed to do either, section 2303.151(e) authorized Bexar Storage to charge only five days' storage fees. The court concluded that Bexar Storage's refusal to release the Nissan to the lienholder on tender of the authorized amount of fees was a wrongful and unauthorized exercise of dominion over the vehicle.

Bexar Storage contends it was entitled to rely on the information it received from the TDMV. It argues that the trial court's construction requires a vehicle storage facility to presume there is always a lienholder, and effectively means that reliance on the TDMV's records is not reasonable. This, it contends, will unreasonably increase the cost and the regulatory burden on vehicle storage facilities because it will require them to conduct a fifty-state title search during the statutory five-day period or to give notice of publication in every case.

We disagree with Bexar Storage's characterization of the meaning and effect of the trial court's rulings. A vehicle storage facility is entitled to rely on registration and title information provided by the TDMV. When the result of an inquiry with the TDMV shows the vehicle is titled in Texas and there is no lienholder, a vehicle storage facility may generally assume the title is clear and there is no lienholder. However, in this case the TDMV did not report that the vehicle was titled in Texas and did not report that there was no lienholder. Instead, the TDMV reported the registration was "for registration purposes only," and it provided no information as to whether there was a lienholder. Under Texas law, a registration "for registration purposes only" means the vehicle is not titled in Texas and the owner is not required to produce information about lienholders in order to obtain such registration. *See* 43 TEX. ADMIN. CODE § 217.24; *Motor Vehicle Title Manual* ¶ 6.5, "Out of State Evidence of Ownership." When the TDMV response to a title and registration inquiry discloses the registration is for registration purposes only and no information about lienholders is disclosed, a vehicle storage facility has received no information about the identity or address of any lienholder, and thus has no basis for assuming there is not a lienholder. In sum, the vehicle storage facility is not required to presume there is always a lienholder; however, under the circumstances of this case, the vehicle storage facility could not presume there was not a lienholder.

Our construction of the obligations imposed on the vehicle storage facility by Chapter 2303 does not unreasonably increase the regulatory burden on such facilities. The statute requires vehicle storage facility operators to take reasonable steps to determine the identity and address of lienholders and requires it to provide notice to the lienholder. In cases where the Texas registration is for registration purposes only and provides no information about lienholders, the vehicle storage facility may be required to do more than make one governmental record request in order to satisfy its obligations. After receiving the report from TDMV, Bexar Storage did not know whether there was a lienholder. The information it received left it unable to determine the identity and address of a lienholder. Bexar Storage could have tried to obtain information about lienholders by submitting a request to the National Motor Vehicle Title Information System to determine where the vehicle was titled and then made a record request to that state. Or it could have requested a title record from Ohio, where the TDMV report showed the Nissan had last been registered. And Bexar Storage could have given notice to lienholders by publication in a newspaper of general circulation in the county where the vehicle was stored. We do not believe that additional inquiry or giving notice by publication in cases such as this is so burdensome that it outweighs the interest of lienholders in being notified that the vehicles have been towed, where they are being stored, and that charges are accruing.

We hold that chapter 2303 of the Occupations Code required Bexar Storage to either identify and locate the lienholder and send it notice of the impoundment or give notice to the lienholder by publication, neither of which Bexar Storage did. We agree with the trial court's conclusion that because Bexar Storage did not comply with the statutory notice requirement, Chapter 2303 authorized Bexar Storage to charge for only five days of storage. Its refusal to release the Nissan after tender of the amount that could lawfully be charged was a wrongful exercise of dominion over the vehicle. The evidence is therefore legally sufficient to support the

trial court's finding that Bexar Storage exercised dominion over the vehicle in an unlawful and unauthorized manner. We overrule Bexar Storage's second issue.

***Damages***

In its third issue, Bexar Storage argues there is no evidence to support the damage award because there is no evidence of the Nissan's value at the time of conversion.

"Generally, the measure of damages for conversion is the fair market value of the property at the time and place of the conversion." *Wise v. SR Dallas, LLC*, 436 S.W.3d 402, 412 (Tex. App.—Dallas 2014, no pet.). "Fair market value has been defined as the price that the property would bring when it is offered for sale by one who desires, but is not obligated to sell, and is bought by one who is under no necessity of buying it." *Id.*

The evidence established the Nissan was towed from an apartment complex at the request of the manager. The address of the complex is the same as that listed by Mr. Johnson in his August 2014 application to register the Nissan in Texas. However, there was no evidence about why the car was towed or whether Mr. Johnson still lived at the complex when the car was towed. DeLoach testified the car had been sitting at the storage facility for a year and a half since it was towed. He testified he did not have a key for the car and had not tried to start it. He testified that at the time of trial, the car had dents and scratches all over it and had four flat tires. DeLoach testified he expected the Nissan could be sold at a public auction for between $350 and $500.

Telhio presented evidence from its expert property damage appraiser, Dana Follis. Follis testified he was hired to establish a value for the Nissan; however, he did not see or inspect the car. For purposes of his testimony, he assumed the car started, had four good tires, and was in average running condition. He conceded he did not know if the car was operable when it was towed, but he assumed it was.

Follis used the last known mileage of the Nissan from the August 2014 registration to calculate an estimate of the average miles driven per month, and projected that mileage to January 2016. He then looked up the NADA used car values for the Nissan and researched the asking price for 2009 Nissan Versas for sale in the area. Using these "comparables," he calculated a market value as of January 20, 2016, of $5,643. Follis's report, which was admitted into evidence, includes copies of the NADA values for the 2009 Nissan as of the date the car was towed and the date of trial. They list trade-in values for a car in "rough," "average," and "clean" condition and retail sale values for a car in "clean" condition. The record does not contain any definition of these terms.

The trial court ruled that Telhio was entitled to recover the market value of the car on the date of the conversion, May 16, 2016. However, because Telhio only presented evidence of values on the date of the tow and the date of trial, the court held it would award the lower – date of trial – value. The court found the vehicle's value to be $4,975, which is shown on Follis's NADA printout as the "clean retail" value, as of the date of trial, of a 2009 Nissan with the mileage Follis had estimated.

Bexar Storage argues that no evidence supports the trial court's finding that the car had a value of $4,975. It argues the "clean retail" values listed in the NADA report and Follis's testimony as to value are not competent evidence because all of those values are based upon the unsupported assumption that the vehicle was in operating condition when it was converted. It further argues the "comparables" do not provide support for the trial court's finding because there was no evidence the cars offered for sale were in fact comparable and no evidence of how much the cars actually sold for. *See Houston Unlimited, Inc. Metal Processing v. Mel Acres Ranch*, 443 S.W.3d 820, 831 (Tex. 2014) (stating that "original list price is some evidence of what a willing

seller will accept, but it is not evidence of what a willing buyer will pay" and does not, alone, "tend to establish the property's market value at the time of listing.")

Telhio contends the trial court could reasonably infer from the fact that the car was towed from a residence that the owner "had been using the car for transportation until shortly before it was towed," thus supporting Follis's assumption that the car was in operating condition when it was towed. We disagree. A factfinder "may not reasonably infer an ultimate fact from meager circumstantial evidence which could give rise to any number of inferences, none more probable than another." *Graham Cent. Station*, 442 S.W.3d at 265. The circumstantial evidence in this case was that the car was towed from an apartment complex at the request of the manager and without the consent of the owner, the owner of the vehicle had listed the complex as his address a year and one-half earlier, and the vehicle's registration had expired. There was no evidence the owner of the car lived in the complex when the car was towed, no evidence of how long it had been since it had been driven, and no evidence about why it was towed. From this meager evidence, it is equally inferable that the vehicle was inoperable and had been abandoned by the owner.

The trial court's damage award was based upon testimony and other evidence that assumed the vehicle was in operating condition when it was converted in May 2016, and there was no probative evidence to support that assumption. We therefore agree with Bexar Storage that no evidence supports the trial court's finding the Nissan had a value of $4,975 when it was converted. *See Houston Unlimited*, 443 S.W.3d at 833 ("if the record contains no evidence supporting an expert's material factual assumptions, . . . opinion testimony founded on those assumptions is not competent evidence"). However, the record contains probative evidence that the Nissan did have some monetary value, and thus that Telhio suffered some damage as a result of Bexar Storage's conversion. DeLoach testified that a buyer would pay between $350 and $500 for the Nissan in its condition at the time of trial. A finder of fact could reasonably infer that the car was in the

same or better condition in May 2016, when the car was converted than it was at the time of trial. We therefore hold some evidence supported the award of damages for conversion, but not at the level awarded by the trial court. *See Rancho la Valencia, Inc. v. Aquaplex, Inc.*, 297 S.W.3d 768, 777 (Tex. 2009) (per curiam); *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 51 (Tex. 1998). "Because there is no legally sufficient evidence to support the entire amount of damages, but there is some evidence of the correct measure of damages," we sustain Bexar Storage's third issue, reverse the judgment, and remand for a new trial. *See Rancho la Valencia, Inc. v. Aquaplex, Inc.*, 383 S.W.3d 150, 152 (Tex. 2012); *Formosa Plastics*, 960 S.W.2d at 51; *see also* TEX. R. APP. P. 44.1(b) (when liability is contested, court of appeals may not reverse for new trial on damages alone).

## ATTORNEY'S FEES

In its final issue, Bexar Storage argues there is no legal basis for the trial court's award of attorney's fees, arguing that fees are not recoverable for conversion and fees are not authorized by contract or any statute. Telhio contends Bexar Storage failed to preserve its argument for appeal. We find that Bexar Storage preserved its argument in its motion for new trial in which it specifically asserted "there is no basis for the attorney fee award."

Attorney's fees may be recovered from an opposing party only as authorized by statute or by contract between the parties. *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 817 (Tex. 2006). Fees are generally not available for conversion claims. *Wiese v. Pro Am Servs., Inc.*, 317 S.W.3d 857, 861 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The judgment states the fees were awarded "pursuant to Chapters 2308 and 2303" of the Texas Occupations Code. "The availability of attorney's fees under a particular statute is a question of law for the court." *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam).

Chapter 2303, the Vehicle Storage Facility Act, does not provide for an award of attorney's fees to private litigants. *See Underwriters at Lloyds of London v. Harris*, 319 S.W.3d 863, 865-66 (Tex. App.—Eastland 2010, no pet.).

In its trial and appellate pleadings, Telhio has cited to sections 2308.205(c), 2308.404, and 2308.458 of chapter 2308, the Texas Towing and Booting Act, as authority for an award of attorney's fees. Section 2308.205 provides that storage and notification fees imposed in connection with a vehicle towed to a storage facility are governed by Chapter 2303, and except as provided by Chapter 2303, Chapter 2308, and section 18.23 of the Texas Code of Criminal Procedure, a fee may not be charged or collected without the prior written consent of the vehicle owner or operator. TEX. OCC. CODE § 2308.205(b), (c). There is no statutory provision for enforcement of section 2308.205 by a lienholder against a vehicle storage facility and no provision for an award of attorney's fees.

Section 2308.404 provides that a towing company, booting company, or parking facility owner may be civilly liable to a vehicle owner if it violates Chapter 2308. *See id.* § 2308.404. It does not establish any civil liability for a *vehicle storage facility* and does not provide for an award of attorney's fees against a vehicle storage facility. *See id.*

Section 2308.458 concerns hearings in which the issues are whether there was probable cause to tow or boot a vehicle and whether the towing or boot removal charges were authorized by Chapter 2308. *Id.* § 2308.458. The section authorizes an award of attorney's fees to the prevailing party at the hearing. *Id.* The parties in this case did not dispute the legality of the tow or whether the towing charges were authorized. Section 2308.458 has no application to this case.

We therefore agree with Bexar Storage that there was no legal basis for the award of attorney's fees, and we sustain its fourth issue.

**CONCLUSION**

The evidence is legally sufficient to support the trial court's findings that Telhio was the primary lienholder of the 2009 Nissan that was towed to Bexar Storage, that Bexar Storage failed to give Telhio the statutorily required notice, and that Bexar Storage refused to release the car on demand and tender of the charges legally owed. However, the evidence is legally insufficient to support the amount of damages awarded. We therefore reverse the trial court's judgment for conversion. Because some evidence supported the award of damages, but not at the level awarded by the trial court, we remand the case to the trial court for a new trial. Lastly, we reverse the award of attorney's fees and render judgment that Telhio take nothing on its claim for fees.

Luz Elena D. Chapa, Justice